# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE NON-PARTY DEPOSITION SUBPOENA<br><br>GEORGETOWN UNIVERSITY<br>Office of the General Counsel<br>37th and O Streets, NW<br>202 Healy Hall<br>Washington, DC 20057 | Case No. _____ |
| JOHN CARFORA, SANDRA PUTNAM, and JUAN GONZALES (aka Gonzalez), individually and as representatives of a class of similarly situated individuals,<br><br>*Plaintiffs*,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, and TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC,<br><br>*Defendants*. | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK<br><br>Case No. 1:21-cv-08384-KPF<br><br>Class Action<br><br>Jury Trial Demanded |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF NONPARTY GEORGETOWN UNIVERSITY'S MOTION TO QUASH DEPOSITION SUBPOENA OR MOTION FOR PROTECTIVE ORDER

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 6

    1.    The Underlying Action ........................................................................... 6

    2.    Plaintiffs' Documents Subpoena .......................................................... 8

    3.    Plaintiffs' Deposition Subpoena ........................................................... 9

LEGAL STANDARD................................................................................................. 11

ARGUMENT ............................................................................................................. 12

I.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT IMPOSES
AN UNDUE BURDEN ON GEORGETOWN ................................................. 12

    A.    The Subpoena Is an Impermissible Fishing Expedition Because Plaintiffs
Have No Factual Basis to Believe Georgetown Engaged in Any
Wrongdoing ....................................................................................... 12

    B.    The Subpoena Seeks to Put Georgetown on Trial Without Affording It the
Protections of a Party ......................................................................... 17

    C.    The Subpoena Is Unduly Burdensome ................................................ 19

    D.    The Information Sought Is More Easily Obtainable from TIAA ........................ 21

II.    THE COURT SHOULD ENTER A PROTECTIVE ORDER ........................................ 22

CONCLUSION.......................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
   406 F. Supp. 3d 72 (D.D.C. 2019), *aff'd*, No. 19-7124, 2020 WL 873574
   (D.C. Cir. Feb. 14, 2020) ...............................................................................................12

*United States ex rel. Barko v. Halliburton Co.*,
   270 F.R.D. 26 (D.D.C. 2010)..........................................................................................21

*Bastin v. Fannie Mae*,
   104 F.3d 1392 (D.C. Cir. 1997).......................................................................................12

*Buie v. Dist. of Columbia*,
   327 F.R.D. 1 (D.D.C. 2018).............................................................................................20

*BuzzFeed, Inc. v. DOJ*,
   318 F. Supp. 3d 347 (D.D.C. 2018).................................................................................11

***Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP
   ("Diamond Services")*,
   339 F.R.D. 334 (D.D.C. 2021).................................................................................13, 17

*DM Rsch., Inc. v. Coll. of Am. Pathologists*,
   170 F.3d 53 (1st Cir. 1999)................................................................................................3

*E.E.O.C. v. Premier Well Servs., LLC*,
   No. 4:10-cv-1419, 2011 WL 2198285 (E.D. Ark. June 3, 2011) ...................................23

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).................................................................................................17, 18

*Mass. Coal. for Immigration Reform v. U.S. Dep't of Homeland Sec.*,
   698 F. Supp. 3d 10 (D.D.C. 2023)...................................................................................18

*N. Carolina Right to Life, Inc. v. Leake*,
   231 F.R.D. 49 (D.D.C. 2005)..........................................................................................11

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
   659 F. Supp. 3d 54 (D.D.C. 2023)...................................................................................11

*Oyenik v. Corizon Health Inc.*,
   No. 13-cv-1597, 2014 WL 12787872 (D. Ariz. Nov. 20, 2014) .....................................17

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
   74 F.4th 171 (4th Cir. 2023) .............................................................................................7

*Sieverding v. DOJ*,
   693 F. Supp. 2d 93 (D.D.C. 2010) ........................................................................12

*Spence v. Am. Airlines, Inc.*,
   775 F. Supp. 3d 963 (N.D. Tex. 2025) ..............................................................5, 18

***Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
   *Morgan Stanley Inv. Mgmt. Inc. ("PBGC")*,
   712 F.3d 705 (2d Cir. 2013)......................................................3, 4, 5, 15, 17

*State Farm Bank, F.S.B. v. Dist. of Columbia*,
   No. 05-611, 2006 WL 8460396 (D.D.C. Nov. 21, 2006) .......................................12

*Tavoulareas v. Washington Post Co.*,
   724 F.2d 1010 (D.C. Cir. 1984), *vacated on other grounds*, 737 F.2d 1170
   (D.C. Cir. 1984) ....................................................................................................17

****Watts v. SEC*,
   482 F.3d 501 (D.C. Cir. 2007) ........................................................................12, 21

*Wilcox v. Georgetown Univ.*,
   No. 18-cv-422-ABJ, 2023 WL 2734224 (D.D.C. Mar. 31, 2023), *aff'd*, No.
   23-7059, 2024 WL 1739266 (D.C. Cir. Apr. 23, 2024) ......................................4, 16

*Wilcox v. Georgetown Univ.*,
   No. 18-cv-422-RMC, 2019 WL 132281 (D.D.C. Jan. 8, 2019) ...........................4, 16

*Wyoming v. USDA*,
   208 F.R.D. 449 (D.D.C. 2002)..............................................................................12

## Statutes

29 U.S.C. § 1002..............................................................................................................19

29 U.S.C. § 1104(a)(1)(B) ...............................................................................................10

## Other Authorities

Fed. R. Civ. P. 26(b)(2)(C) ..............................................................................................22

Fed. R. Civ. P. 30(b)(6)....................................................................................................20

Fed. R. Civ. P. 32(a)(8).....................................................................................................18

Fed. R. Civ. P. 45.......................................................................................................11, 21

iii

**INTRODUCTION**

In the most recent iteration of this far-fetched case,[1] Plaintiffs allege that the Teachers Insurance and Annuity Association of America and TIAA-CREF Individual & Institutional Services, LLC (together, "TIAA") cross-sold its out-of-plan products to participants in thousands of defined contribution retirement plans across the country; that TIAA's clients—the employer sponsors of these plans—all breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to limit this cross selling; and that TIAA "knowingly participated" in the breaches committed by the plan sponsors. Decl. of Brantley Webb ("Webb Decl.") Ex. A (Second Am. Compl.) ¶¶ 113-146.

TIAA provides recordkeeping and investment services for thousands of retirement plans. Webb Decl. Ex. A ¶ 15. Under certain conditions, a participant in a retirement plan may voluntarily choose to "rollover" money in his or her plan into out-of-plan products, such as wealth management services, like those offered by TIAA. *Id.* ¶¶ 29, 123. The three named Plaintiffs each chose to rollover certain funds from their retirement plans into TIAA nonplan products. *Id.* ¶¶ 12-14. Although Plaintiffs originally alleged that such rollovers breached fiduciary duties *TIAA* owed to them (Dkt. No. 1), after those claims were dismissed, they switched to a last-ditch theory that TIAA "knowingly participated" in the failure of TIAA's plan sponsor clients to limit or discourage rollovers (Ex. A ¶ 17). Plaintiffs have not named the plan sponsors as defendants in the underlying Action. Instead, they seek to use one-sided third-party discovery in the hopes of eliciting evidence that the plan sponsors breached their fiduciary duties of prudence under ERISA.

Lacking specific factual allegations, Plaintiffs allege it can be inferred that thousands of plan sponsors breached their fiduciary duties by: (1) failing to prohibit cross selling, (2) failing to

---

[1] The underlying case is *Carfora v. Teachers Insurance and Annuity Association of America*, No. 1:21-cv-08384-KPF (S.D.N.Y.) (the "Action").

protect confidential plan participant data, (3) failing to require TIAA to say certain things in conversations with plan participants about rollovers of retirement funds to nonplan products, including alerting them to a Morningstar advice service; (4) failing to determine revenues derived from cross selling and using those to negotiate TIAA's recordkeeping compensation, and (5) generally failing to monitor TIAA's cross selling. Webb Decl. Ex. A ¶¶ 68, 165.

Because the only defendant in the case is TIAA, Plaintiffs' Second Amended Complaint ("SAC") alleges almost nothing about the third-party plan sponsors. That is especially true as to non-party Georgetown University ("Georgetown" or "University"). Plaintiff Juan Gonzales was a Georgetown professor from 2000-2003, and is now a professor at the University of Texas at Austin. Webb Decl. Ex. C (Gonzales Dep. Tr.) at 24:20-26:10. The SAC contains exactly one paragraph alleging that Dr. Gonzales voluntarily went to a TIAA office in Texas—in 2013—and, after speaking with a TIAA advisor, chose to rollover some fraction of funds from his Georgetown retirement plan into a TIAA nonplan product. Webb Decl. Ex. A ¶¶ 14, 156.

The SAC does not mention Georgetown University or its retirement plan fiduciaries *at all*. It does not contain a single substantive allegation identifying any defects with Georgetown's conduct or fiduciary processes, does not allege any harm attributable to Georgetown's plan fiduciaries, and instead alleges only that Dr. Gonzales voluntarily engaged in a conversation with TIAA about his retirement savings long after leaving Georgetown. Webb Decl. Ex. A ¶ 156. Plaintiffs plainly did not plead that *Georgetown* violated its fiduciary duties under ERISA.

On March 3, 2026, the *Carfora* Court dismissed Plaintiffs' claims with respect to the thousands of retirement plans in which no named Plaintiff claimed to have participated. Dkt. No. 235 at 34. That left the four plans in which Plaintiffs alleged they participated, including Georgetown's plan. Now, Plaintiffs seek to subpoena Georgetown to testify on eight broad

2

process-based topics not adequately pleaded in the SAC, including "Your analysis, review, and/or monitoring" of "TIAA's sales or promotion of its Non-Plan Products or Services to participants in the Plan" and "TIAA's revenue from the sale or promotion of its Non-Plan Products or Services to participants in the Plan." Webb Decl. Ex. I (Deposition Subpoena) at PDF p. 6. This comes on the heels of a prior document subpoena to which Georgetown made a good-faith response. [2]

Third-party discovery must be relevant to a party's pleaded claims. "[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. ("PBGC")*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)). Plaintiffs' Subpoena is nothing more than a burdensome fishing expedition to try to land on some unpleaded indication that Georgetown violated its fiduciary duty. That is prohibited under the Federal Rules.

None of Plaintiffs' theories of breach, including that plan sponsors failed to prohibit cross selling and/or allowed the misuse of confidential participant data (Webb Decl. Ex. A ¶ 165) are relevant with respect to *Georgetown*. Dr. Gonzales's account is that he voluntarily went to a TIAA office in Texas to discuss his retirement savings. *Id*. ¶ 156. No inference can be drawn that it was a failure by Georgetown to protect his data, or ban cross selling, that caused this voluntary meeting. Likewise, Plaintiffs do not muster allegations that Georgetown breached its fiduciary duties by failing to require TIAA to provide information about a Morningstar advice service to Dr. Gonzales

---

[2] Over objections, and without conducting custodial discovery, Georgetown already produced limited documents to Plaintiffs in connection with an initial document request. Webb Decl. Ex. E (Feb. 27, 2025 Responses and Objections to Documents Subpoena); Ex. F at PDF pp. 4-5 (Mar. 28, 2025 Email between P. Greco and T. Scudieri).

3

in his TIAA meeting in Texas. *Id.* ¶¶ 68, 165. Among other things, Plaintiffs do not allege that this service was available to Georgetown's plan participants or to Dr. Gonzales. *See id.* ¶ 68. Testimony from Georgetown is thus not relevant to these theories of breach.

Plaintiffs' theory that plan sponsors like Georgetown breached their fiduciary duties by failing to ask for TIAA's revenues derived from cross selling or using those revenues to negotiate TIAA's recordkeeping compensation is even less connected to Georgetown. Webb Decl. Ex. A ¶ 165. Although "ERISA imposes extensive disclosure requirements on plan administrators, thus giving plan beneficiaries the opportunity to find out how the fiduciary [dealt with] the plan's assets" (*PBGC*, 712 F.3d at 720), Plaintiffs flatly do not allege—nor does the SAC even hint—that Georgetown's recordkeeping fees were imprudent in any respect.[3] Finally, because they have not plausibly alleged any basis to infer that Georgetown breached its fiduciary duties, Plaintiffs cannot take refuge in their general theory that Georgetown failed to monitor cross selling.

Georgetown moves to quash the Subpoena for several independent reasons. First, the Subpoena is an impermissible fishing expedition because Plaintiffs have not alleged that *Georgetown* breached its fiduciary duties—and the Court should not permit Plaintiffs to use third-party discovery to manufacture the very factual predicate they would need to state a viable claim. Second, the Subpoena seeks to put Georgetown's fiduciary conduct on trial in a proceeding where the University is denied the procedural protections of a party, including the ability to challenge the

---

[3] Indeed, just two years ago, Georgetown defeated a lawsuit in which the plaintiffs alleged that it "failed to properly evaluate the amount the Plans were paying TIAA for administrative expense" and "failed to engage in a prudent process for the evaluation and monitoring of amounts being charged for administrative expense." Proposed First Am. Compl., *Wilcox v. Georgetown Univ.*, No. 18-cv-0422 (D.D.C. Dec. 10, 2021), Dkt. No. 58-2 ¶¶ 10, 139. This Court found, in two separate opinions dismissing the complaint and then denying leave to amend, that the plaintiffs' case was "a lawsuit in search of a theory," and that while the plaintiffs had "identif[ied] ways in which plan management could be different, or even improved," they had "not alleged facts to support a plausible inference that the defendants have failed as fiduciaries." *Wilcox v. Georgetown Univ.*, No. 18-cv-422-ABJ, 2023 WL 2734224, at *1 (D.D.C. Mar. 31, 2023), *aff'd*, No. 23-7059, 2024 WL 1739266 (D.C. Cir. Apr. 23, 2024); *see also Wilcox v. Georgetown Univ.*, No. 18-cv-422-RMC, 2019 WL 132281, at *1 (D.D.C. Jan. 8, 2019).

sufficiency of the allegations through a motion to dismiss or to conduct its own discovery. Third, the Subpoena is highly burdensome, including because the temporal period identified in the SAC is vast (2012 to the present), the proposed deposition topics are not defined with reasonable particularity, and much of the information Plaintiffs seek is more easily obtainable from TIAA itself.

With respect to burden, there is no question that defending against an alleged breach of the fiduciary duty of prudence is highly burdensome. "[D]iscovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times." *PBGC*, 712 F.3d at 719. As a third party, Georgetown does not even have the necessary tools to mount a proper defense to Plaintiffs' unfounded claim that it breached its fiduciary duties. Courts have held that to prove—and defend against—a claim of breach of a fiduciary duty, specifically the duty of prudence, expert testimony is frequently "required to demonstrate the prevailing standard of care." *Spence v. Am. Airlines, Inc.*, 775 F. Supp. 3d 963, 1003 n.30 (N.D. Tex. 2025). As a third party, Georgetown has no ability to test any expert opinion from Plaintiffs about its conduct or offer expert testimony in its own defense.

Georgetown should not be subjected to this kind of one-sided inquiry when the SAC does not allege that Georgetown acted imprudently in any respect. A deposition would require the University to submit to adversarial questioning without any ability to challenge the sufficiency of the underlying allegations or mount a full defense. That asymmetry (all of the exposure of litigation with none of its protections) underscores why the Subpoena should be quashed. As the *Carfora* Court itself observed, "Plaintiffs' refusal to specify what these Plan Sponsors actually did to breach

their fiduciary duties (and thereby bring about Defendants' liability) would seem to contravene Federal Rule of Civil Procedure 8." Dkt. No. 235 at 27.

The *Carfora* Court recently declined to quash deposition subpoenas that the Plaintiffs served on non-parties Dartmouth College and the Pacific Institute on Research and Evaluation ("PIRE") in the underlying case. Georgetown does not seek to challenge or dispute the court's rulings on those motions in any way. However, Dartmouth and PIRE challenged their subpoenas on different grounds than Georgetown raises here—they focused on burden and statute of limitations arguments. *See* Dkt. No. 242; Dkt. No. 244 at 2-3.

Georgetown seeks to quash Plaintiffs' Subpoena because Plaintiffs have not articulated any theory of relevance with respect to Georgetown's testimony. Plaintiffs' sparse allegations with respect to Georgetown in the SAC do not suggest any imprudence on Georgetown's part that would justify such a disproportionate burden and prejudicial one-sided proceeding. Plaintiffs have identified no allegations and no evidence that anyone from Georgetown's plan received marketing campaigns, or had their confidential data abused by TIAA. Likewise, they point to nothing to suggest that Georgetown's recordkeeping process or fees were unreasonable. The analysis with respect to Georgetown is thus different than what was before the *Carfora* Court in Dartmouth and PIRE's respective motions. For these reasons, Georgetown respectfully requests that the Court quash Plaintiffs' Subpoena or, as explained below, limit its scope.

## **BACKGROUND**

### 1.      **The Underlying Action**

Plaintiffs filed their class action complaint in *Carfora* on October 11, 2021. Dkt. No. 1. Plaintiffs alleged in their original complaint that the TIAA Defendants acted as ERISA fiduciaries towards Plaintiffs when they cross sold TIAA nonplan products to Plaintiffs. *Id.* ¶ 17. The *Carfora* Court found that Plaintiffs "failed to allege that TIAA owed any fiduciary duties to them." Dkt.

6

No. 49, at 50. As multiple courts have found "when a cross-seller pitches his other services, he is performing an 'arms-length negotiation' that doesn't constitute a fiduciary function." *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 180 (4th Cir. 2023) (quoting *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002-03 (8th Cir. 2016)).

Plaintiffs filed a Second Amended Complaint on November 3, 2023. Plaintiffs now alleged that TIAA was a "knowing participant" in the fiduciary breaches of its clients—thousands of plan sponsors—with respect to cross selling. Webb Decl. Ex. A; Webb Decl. Ex. B ¶ 5. Plaintiffs alleged that it can be inferred that TIAA's thousands of plan sponsor clients all breached their fiduciary duties by: (1) failing to prohibit cross selling, (2) failing to protect confidential plan participant data, (3) failing to require TIAA to disclose certain information in conversations with plan participants about nonplan products; (4) failing to inquire about and/or determine TIAA's revenues derived from cross selling and using those to negotiate TIAA's recordkeeping compensation, and (5) generally failing to monitor TIAA's cross selling. Defendants moved to dismiss the SAC. While that motion was pending, discovery commenced in July 2024.

On March 3, 2026, the *Carfora* Court dismissed Plaintiffs' claims with respect to the 9,896 plans in which no named Plaintiff alleged they participated, leaving only the four plans in which the named Plaintiffs alleged they participated, including Georgetown's plan. Dkt. No. 235 at 34; *see also* Ex. B ¶ 5. On March 18, 2026, Plaintiffs petitioned for permission to appeal the decision of the *Carfora* Court dismissing the sponsors of unidentified plans from the case. *Carfora v. Tchrs. Ins. and Annuity Ass'n of Am.*, No. 26-674 (2d Cir). Discovery continued in the case.

On April 7, 2026, PIRE and Dartmouth College, respectively, moved to quash deposition subpoenas received from Plaintiffs that are essentially identical to the Subpoena served on Georgetown. Dkt. Nos. 242, 244. Both institutions made burden and statute of limitations

7

arguments and noted that Plaintiffs' claims would likely fail on the merits. *Id.* On April 9, 2026, the *Carfora* Court issued a ruling in which it recognized that the burden posed by the subpoenas on the nonprofit organizations was "substantial," but denied PIRE and Dartmouth's motions to quash. Webb Decl. Ex. J (Dkt. No. 250) at 4.

Discovery is set to close on April 20, 2026. Dkt. No. 192. Expert discovery has not yet been scheduled in light of Plaintiffs' appeal of the *Carfora* Court's decision dismissing the sponsors of unidentified plans. Dkt. No. 237.

**2.    Plaintiffs' Documents Subpoena**

Plaintiffs initially served a subpoena for the production of documents (the "Documents Subpoena") on Georgetown on February 10, 2025. *See* Webb Decl. Ex. D (Deposition Subpoena). The Documents Subpoena sought more than ten years' worth of documents on wide-ranging topics, including on multiple topics where relevant documents were more likely to be in TIAA's possession. *Id.* at PDF p. 9. The subpoena's Request No. 1 sought "Documents relating to TIAA promoting and selling its Non-Plan Products or Services to" plan participants, including many subcategories of documents. *Id.* Although Georgetown did not engage in custodial discovery— which would have required collection of more than ten years' of documents and emails from some 20 custodians, application of search terms, review, redactions, and production of documents— Georgetown made a good-faith effort to comply with the Documents Subpoena. *See* Webb Decl. Ex. E at 3-5. Georgetown served responses and objections to the Documents Subpoena on February 27, 2025, and, subject to its objections, produced responsive documents in its possession in response to Request No. 2 for "[a]ll recordkeeping or custodial agreements with TIAA for the Plan," on March 28, 2025. Webb Decl. Ex. F at PDF pp. 5-6.

On April 10, 2025, Georgetown met and conferred with counsel for Plaintiffs regarding its responses to the Documents Subpoena. *See* Webb Decl. Ex. F at PDF pp. 3-4. Plaintiffs' counsel

took issue with the lack of information available in response to their first document request, and asked Georgetown to provide "a statement addressing request no. 1." *Id.* at PDF p. 3. Georgetown complied, providing a statement that, "having conducted a reasonable search for documents responsive to Request No. 1, the University has been unable to identify any such documents." *Id.* at PDF p. 2. Georgetown communicated to Plaintiffs that it did not conduct custodial discovery, and Plaintiffs did not pursue that point further. *Id.*

**3.    Plaintiffs' Deposition Subpoena**

Georgetown next heard from Plaintiffs' counsel on January 5, 2026, when it received an email message with a notice of deposition and the following proposed deposition topics. *See* Webb Decl. Ex. G.

> 1. Your analysis, review, and/or monitoring of TIAA's sales or promotion of its Non-Plan Products or Services to participants in the Plan.
>
> 2. Communication between you and TIAA regarding its promotion and/or sale of its Non-Plan Products or Services to participants in the Plan.
>
> 3. Communication between you and TIAA regarding Non-Plan Products or Services.
>
> 4. Your analysis, review, and/or monitoring of TIAA's revenue from the sale or promotion of its Non-Plan Products or Services to participants in the Plan.
>
> 5. Your analysis, review, monitoring, and/or restriction of Plan assets transferred into Non-Plan Products or Services.
>
> 6. Your analysis, review, and/or monitoring of incentive compensation and/or other benefits received by Financial Consultants for selling Non-Plan Products or Services to participants in the Plan.
>
> 7. Your analysis, review, monitoring, and/or restriction of TIAA's use of recordkeeping data it obtained from the Plan.
>
> 8. Your analysis, review, and/or monitoring of recordkeeping contracts with TIAA, including but not limited to, the negotiation of recordkeeping contracts.

*Id.* at PDF p. 8.

9

These topics are much broader than those contained in the earlier-issued Documents Subpoena. They seek process-based information from Georgetown about its review and monitoring of numerous topics including cross selling, roll-overs, use of participant data, TIAA compensation, as well as Georgetown's negotiation and monitoring of the TIAA recordkeeping agreement more generally—including, i.e., the recordkeeping services TIAA provides to the plans and TIAA's compensation. Webb Decl. Ex. G at PDF pp. 7-8.

ERISA requires fiduciaries to use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Plaintiffs have been clear that they intend to depose Georgetown to try to establish that it "***breached*** [its] fiduciary duties under [ERISA] by failing to monitor the imprudent cross-selling efforts of [TIAA]." Dkt. No. 189 at 1 (emphasis added). They argue that, "[h]ad plan sponsors discharged their fiduciary duties adequately, they 'would have identified the cross-selling activities' that Plaintiffs allege to be unlawful." *Id.* at 2 (quoting Dkt. No. 78 at 7).

Georgetown met and conferred with Plaintiffs several times between January 19, 2026 and March 2, 2026 to try to understand the scope of the deposition and narrow the topics, but the parties were unable to reach any agreement. Webb Decl. Ex. H. On March 2, 2026, Georgetown asked for clarification from Plaintiffs on the scope of a proposed deposition on "examination on the recordkeeping agreements Georgetown previously produced and the negotiations associated with those agreements." *Id.* at PDF pp. 3-4. However, Plaintiffs never responded. *Id.* at PDF pp. 2-3. On March 27, 2026, Plaintiffs reached out to Georgetown asking to confer again and attaching their original proposed list of topics for deposition amended to apply to the fiduciaries of Georgetown's benefits plans. *Id.* at PDF p. 2. After the parties were still unable to agree on scope,

10

Plaintiffs served Georgetown with a Deposition Subpoena on April 6, 2026. *See* Webb Decl. Ex.

I. Georgetown now moves to quash the Deposition Subpoena.[4]

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 45 governs the scope of subpoenas. *See* Fed. R. Civ. P. 45.

Courts "must assess any objections to the subpoena under the standards supplied by Rule 45, which

'requires that district courts quash subpoenas that call for privileged matter or would cause an

undue burden." *BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *Watts v.*

*SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007)). The "party resisting discovery" bears the burden "to

show that the [discovery] requested [is] . . . unduly burdensome." *In re Non-Party Subpoena to*

*Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (citation modified). "Whether

a subpoena imposes an undue burden depends on the specific facts of the case." *Id.* (quoting *Dell*

*Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017)). Factors courts consider in determining

whether there is an undue burden include:

> (1) whether the discovery sought is "unreasonably cumulative or duplicative"; (2)
> whether the discovery sought "can be obtained from some other source that is more
> convenient, less burdensome, or less expensive"; and (3) whether the discovery
> sought is "proportional to the needs of the case," taking into account "the
> importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit[.]

*BuzzFeed, Inc.*, 318 F. Supp. 3d at 358 (quoting Fed. R. Civ. P. 26(b)(1), (2)(C)).

Taking these factors into account, requests for irrelevant material may establish an undue

burden. *See N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005) (granting non-

---

[4] Georgetown understands that Plaintiffs may seek transfer of this motion to the Southern District of New York, where the underlying Action is pending. Federal Rule of Civil Procedure 45(d)(3)(A) provides that motions to quash a subpoena must be brought in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). The subpoena commands Georgetown to appear for a deposition at its Office of the General Counsel in Washington, D.C. *See* Webb Decl. Ex. I at PDF p. 2. This Court is therefore the proper forum to resolve the motion, which raises issues of relevance and undue burden on a nonparty that the Court is well positioned to resolve.

party witnesses' motion to quash where respondents failed to establish relevance of materials sought); *State Farm Bank, F.S.B. v. Dist. of Columbia*, No. 05-611, 2006 WL 8460396 (D.D.C. Nov. 21, 2006) (denying motion to compel where requests sought irrelevant information and thus imposed undue burden); *Wyoming v. USDA*, 208 F.R.D. 449 (D.D.C. 2002) (denying motion to compel and granting non-party witnesses' motion to quash subpoenas that sought irrelevant information).

It is axiomatic that "[t]he Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts*, 482 F.3d at 509. "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Id.* (internal quotation marks omitted).

## ARGUMENT

### I.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE IT IMPOSES AN UNDUE BURDEN ON GEORGETOWN

#### A.    The Subpoena Is an Impermissible Fishing Expedition Because Plaintiffs Have No Factual Basis to Believe Georgetown Engaged in Any Wrongdoing

The Court should quash the subpoena because Plaintiffs have identified no factual basis to believe Georgetown breached its fiduciary duties, and therefore no basis to believe the information Georgetown possesses is relevant to any claim in this case. *See generally* Webb Decl. Ex. A. Discovery "cannot be based on mere conjecture or speculation." *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 82 (D.D.C. 2019), *aff'd*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) (internal quotation marks omitted). Courts should accordingly "deny a discovery request that would amount to nothing more than a fishing expedition." *Sieverding v. DOJ*, 693 F. Supp. 2d 93, 104 n.9 (D.D.C. 2010) (quoting *Bastin v. Fannie Mae*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)). Thus, in considering whether a third-party subpoena poses an undue burden, courts consider whether the subpoena rests on nothing more than speculation. *See*

12

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP ("Diamond Services")*, 339 F.R.D. 334, 340 (D.D.C. 2021).

*Diamond Services* is instructive. 339 F.R.D. at 340. There, a court in this district granted a motion to quash third-party subpoenas where the subpoenaing party had no factual basis for its belief that the non-parties possessed relevant information. *Id*. at 340-41. The case arose out of a patent-licensing dispute in which one side suspected that its litigation adversary was secretly using outside law firms to file challenges to its patent on the adversary's behalf. *Id.* at 337-38. Acting on suspicion alone, the subpoenaing party served subpoenas on the two law firms – neither of which was a party to the lawsuit – demanding that they reveal the identity of their confidential clients. *Id.* But the law firms denied the allegation, and the subpoenaing party had no evidence to the contrary beyond its own say-so. *Id.* at 337, 340. The court quashed the subpoena, reasoning that the "slim chance of a 'likely benefit' from enforcing the subpoenas" favored quashing, because the subpoenas' "entire premise rest[ed] upon nothing more than an *ipse dixit*." *Id.* at 340 (internal quotation marks omitted). The court stressed that the subpoenaing party had "multiple alternatives" to pursue discovery from the actual parties before burdening nonparties, and that "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Id.* at 341 (internal quotation marks omitted). Because the subpoenas rested on speculation, the court concluded that "there is no justification for a wholesale fishing expedition" in the non-parties' affairs. *Id.* at 340 (internal quotation marks omitted). The same analysis compels the same result here because Plaintiffs have not identified any basis to believe that Georgetown breached its fiduciary duties.

Specifically, the SAC wholly fails to connect Georgetown to any of Plaintiffs' alleged theories of breach.

13

*First,* Plaintiffs allege that plan sponsors breached their fiduciary duties by failing to prohibit cross selling. Webb Decl. Ex. A ¶ 165. However, the SAC also alleges that "Plaintiffs are not asserting that every failure to categorically prohibit cross-selling is a per se breach of fiduciary duty." *Id.* ¶ 123. Thus, the SAC provides no basis to conclude that Georgetown might have breached its fiduciary duties by not banning cross selling outright.

*Second,* Plaintiffs allege that plan sponsors breached their fiduciary duties by "failing to take steps to protect Plaintiffs and class members by preventing Defendants' fraudulent sales tactics and misuse of confidential participant data." Webb Decl. Ex. A ¶ 165. The SAC does not allege that Dr. Gonzales was cold called by TIAA to rollover his retirement savings to a nonplan product or that TIAA solicited Dr. Gonzales through mailings or marketing messages. Instead, Dr. Gonzales alleges that he voluntarily visited a TIAA office in Texas to meet with TIAA. *Id.* ¶ 156. These alleged facts provide no basis to conclude that Georgetown might have breached its fiduciary duties through failure to bar fraudulent sales and misuse of confidential participant data.

*Third,* Plaintiffs allege that whenever plan participants initiated discussions with TIAA about their retirement savings, including rollover options, TIAA was required to provide specific information about fees and competitor advice services, including a specific Morningstar advice service. Webb Decl. Ex. A ¶¶ 68, 123, 165. Plaintiffs allege that if a plan sponsor failed to require this of TIAA, it breached its fiduciary duties under ERISA. *Id.* However, Plaintiffs do not allege that these services, including the Morningstar service, were even available to Georgetown's plan participants.

Likewise, with respect to Dr. Gonzales, the SAC alleges that he was *not* utilizing any active management service in connection with his plan account and that the TIAA representative educated him about nonplan services that "would engage in 'active monitoring'" of his money.

14

Webb Decl. Ex. A ¶ 156. The SAC faults TIAA for not informing Dr. Gonzales about other "lower cost or no cost" active management services, but does not allege that any such lower cost or no cost active management services were available to him either in plan or elsewhere. *Id.* Importantly, the SAC does not allege that the TIAA representative failed to disclose fees associated with the nonplan product.[5] *Id.*

Plaintiffs' allegation that Georgetown should have required TIAA to disclose data showing the projected performance of TIAA's active management of his portfolio versus staying in his unmanaged retirement plan account (Webb Decl. Ex. A ¶ 165) is patently insufficient to point to a breach of duty by Georgetown. Plaintiffs do not allege that projections of investment performance can predict future investment results or that they are especially reliable in doing so. Plaintiffs should not be able to take far-reaching discovery to support theories they have not connected to any misconduct by Georgetown.

**Fourth,** Plaintiffs claim that plan sponsors breached their fiduciary duty by "failing to inquire into Defendants' revenues derived from cross-selling" and "failing to monitor and account for the amount of Defendants' revenues derived from cross-selling to evaluate whether Defendants' compensation was reasonable for the services provided to the plans." Webb Decl. Ex. A ¶ 165. This theory is wholly unconnected to Georgetown. The SAC contains no allegations— no suggestion—that Georgetown's plan fees were imprudent or unreasonable; it contains no information about Georgetown's fees at all. *See generally id*.

---

[5] The SAC's allegation that the fees for TIAA's active management service would be higher than the fees associated with Dr. Gonzales's *un*managed plan portfolio is unsurprising, given that Dr. Gonzales would be purchasing an additional management service for his funds. Webb Decl. Ex. A ¶ 156. Given that Plaintiffs do not allege that TIAA failed to disclose the fees for the active management service, and that Dr. Gonzales already had the fee information for his plan portfolio, no inference of imprudence can be attributed to Georgetown for failing to require TIAA to make the specific comparison that Dr. Gonzales now claims he would have preferred in his conversation with TIAA. *See PBGC*, 712 F.3d at 720 (discussing fee disclosure requirements under ERISA).

15

Just three years ago, this Court rejected a similar theory that Georgetown had "failed to properly evaluate the amount the Plans were paying TIAA for administrative expense" and "failed to engage in a prudent process for the evaluation and monitoring of amounts being charged for administrative expense" on a complaint that included actual allegations about Georgetown's alleged plan fees. Proposed First Am. Compl., *Wilcox*, No. 18-cv-0422, Dkt. No. 58 ¶¶ 10, 139; *see Wilcox*, No. 18-cv-422-RMC, 2019 WL 132281, at *1; *Wilcox*, No. 18-cv-422-ABJ, 2023 WL 2734224, at *1, *aff'd*, No. 23-7059, 2024 WL 1739266 (D.C. Cir. Apr. 23, 2024). The SAC contains no basis to infer that Georgetown's plan fees were imprudent and Plaintiffs should not be allowed to abuse the discovery process to fish for evidence.

***Finally,*** Plaintiffs have a catchall theory that plan sponsors breached their fiduciary duties because they "fail[ed] to protect Plaintiffs and class members' interests and those of their plans by allowing or failing to monitor Defendants' cross-selling efforts and to discover Defendants' fraudulent sales tactics." Webb Decl. Ex. A ¶ 165. But because Plaintiffs have not plausibly alleged any basis to infer that Georgetown breached its fiduciary duties, they cannot rely on some unspecified theory that Georgetown failed to monitor TIAA's cross selling.

In sum, none of Plaintiffs' theories of breach has any factual connection to Georgetown and so discovery into these matters will not yield information relevant to any claim in this case. Had Plaintiffs actually named Georgetown as the defendant in their case, there is little question that they could not survive the pleading requirements of Rule 8, let alone obtain the discovery they now seek through a third-party subpoena. Plaintiffs' Subpoena, in substance, is an attempt to circumvent the requirements of Federal Rule of Civil Procedure 8 by using third-party discovery to try to locate a factual predicate that they would need to state their derivative claim against TIAA. Rule 8 demands more: "the price of entry, even to discovery, is for the plaintiff to allege a factual

16

predicate concrete enough to warrant further proceedings, which may be costly and burdensome." *PBGC*, 712 F.3d at 719 (internal quotation marks omitted). The Supreme Court has recognized that this gatekeeping function is especially critical in the ERISA context. The Court's concern in *Fifth Third Bancorp v. Dudenhoeffer* about allowing meritless claims to proceed applies with full force here. 573 U.S. 409, 423, 425 (2014). The Subpoena is the paradigmatic example of a fishing expedition, and the Court should quash it.

**B.    The Subpoena Seeks to Put Georgetown on Trial Without Affording It the Protections of a Party**

The Court should likewise quash the Subpoena because it seeks to place Georgetown's fiduciary conduct on trial in a proceeding where Georgetown is denied the procedural protections that any party would receive as a matter of course. An "important element" in discovery disputes "is the fact that the party from whom the documents were [requested] was not made a defendant in the proceedings and now objects to [disclosure]." *Tavoulareas v. Washington Post Co.*, 724 F.2d 1010, 1025 n.27 (D.C. Cir. 1984), *vacated on other grounds*, 737 F.2d 1170 (D.C. Cir. 1984) (quoting *United States v. Hubbard*, 650 F.2d 293, 319 (D.C. Cir. 1980)). For this reason, courts must consider whether "potentially important legal rights are implicated by a subpoena," and where they are, whether "alternative sources" that are "more convenient [or] less burdensome . . . should be explored first." *Diamond Services*, 339 F.R.D. at 339 (alteration in original) (quoting *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 88 (D.D.C. 2010)). More broadly, "[t]o obtain discovery from a nonparty, [the requesting] party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *Oyenik v. Corizon Health Inc.*, No. 13-cv-1597, 2014 WL 12787872 (D. Ariz. Nov. 20, 2014) (alterations in original) (internal quotation marks omitted). Plaintiffs' need—which is based on nothing more than pure speculation at the Georgetown might have breached its fiduciary duty—does not outweigh Georgetown's substantial

17

interest in being free from a one-sided inquiry that could carry serious legal and reputational consequences.

Plaintiffs have made clear that the purpose of their Deposition Subpoena is to establish that Georgetown "breached [its] fiduciary duties under [ERISA] by failing to monitor the imprudent cross-selling efforts of " TIAA. Dkt. No. 189, at 1. Despite being accused of breaching its fiduciary duties, Georgetown does not have the tools that any defendant would have to mount a defense. Georgetown has had no opportunity to test the sufficiency of Plaintiffs' allegations through a motion to dismiss, which the Supreme Court has identified as an "important mechanism" for guarding against meritless duty-of-prudence claims. *See Dudenhoeffer*, 573 U.S. at 425. And Georgetown has no ability to conduct its own discovery, including expert discovery, which is used to demonstrate the prevailing standard of care for a breach of prudence claim. *Spence*, 775 F. Supp. 3d at 1003 n.30. In short, Plaintiffs seek to conduct what amounts to a totally one-sided trial of Georgetown's fiduciary conduct—one in which the University must submit to examination but has no ability to challenge the allegations, present its own evidence, or offer the expert testimony necessary to defend its processes.

A finding that Georgetown breached its fiduciary duties could carry serious legal and reputational consequences. If Plaintiffs are permitted to depose Georgetown's representatives, the deposition transcript could be used in subsequent proceedings, and the resulting record could serve as a roadmap for future litigation against Georgetown. *See* Fed. R. Civ. P. 32(a)(8); *Mass. Coal. for Immigration Reform v. U.S. Dep't of Homeland Sec.*, 698 F. Supp. 3d 10, 29 n.6 (D.D.C. 2023). The Court should not permit Plaintiffs to conscript Georgetown into a one-sided proceeding in which Georgetown bears all of the burdens of litigation but has none of its protections.

18

### C.    The Subpoena Is Unduly Burdensome

The scope of the burden Plaintiffs seek to impose on Georgetown is sweeping. The Subpoena covers "all employee welfare benefit plans as defined by 29 U.S.C. § 1002 sponsored by Georgetown . . . that are serviced by TIAA." Webb Decl. Ex. I at PDF p. 5. It commands Georgetown to designate a Rule 30(b)(6) witness to testify on behalf of the fiduciaries of these plans and "all of the committees, affiliates, divisions, departments, offices, administrative units, and all present and former officers, directors, employees, representatives, agents, and all other persons acting for or on behalf of the fiduciaries." *Id.* at PDF pp. 2, 5.

The witness must be prepared to testify on eight separate topics, including Georgetown's "analysis, review, and/or monitoring" of TIAA's sales of non-plan products, its communications with TIAA, its monitoring of incentive compensation, and its negotiation of recordkeeping contracts, among others. Webb Decl. Ex. I at PDF p. 6. "Non-Plan Products or Services" is defined extremely broadly to include "*all* products or services offered by TIAA outside of a retirement plan," including, but "not limited to, private asset management, individual wealth management, Portfolio Advisor, retail mutual funds, retail annuities, insurance, and individual retirement products." *Id*. at PDF p. 5 (emphasis added). In other words, if a Georgetown plan participant uses some of her retirement plan savings to purchase life insurance, for example, that is covered by Plaintiffs' Subpoena.

To prepare a 30(b)(6) witness on these topics, Georgetown would have to interview all individuals who served on its fiduciary committee in the past fifteen years, their internal and external advisors, as well as relevant staff, including some who are no longer with the University. Decl. of Vivek Kumar ("Kumar Decl.") ¶ 6. For Topic No. 8 ("Your analysis, review, and/or monitoring of recordkeeping contracts with TIAA, including but not limited to, the negotiation of recordkeeping contracts"), Georgetown would have to analyze information going back *to 2007*,

19

when it signed its recordkeeping agreement with TIAA. *Id*. For this topic in particular, Georgetown would also have to collect and review significant volumes of electronically stored information. *Id*. All in service of a theory for which Plaintiffs have not identified a single factual basis to believe Georgetown did anything wrong.

In addition, the Subpoena should be quashed because its proposed deposition topics are not defined with reasonable particularity. The party seeking testimony under Rule 30(b)(6) must "describe with reasonable particularity the matters" on which examination is requested. Fed. R. Civ. P. 30(b)(6). "To meet that standard, the 30(b)(6) notice, or related correspondence, must contain sufficient information to put the receiving party on notice of the areas of inquiry that will be explored in the deposition." *Buie v. Dist. of Columbia*, 327 F.R.D. 1, 11 (D.D.C. 2018). Rule 30(b)(6) deposition topics that are "broad and amorphous" do not meet that standard. *Id.* at 9 n.3.

Such is the case here. Each topic is directed not merely to Georgetown's plan fiduciaries, but to Georgetown "and all of [its] committees, affiliates, divisions, departments, offices, administrative units, and all present and former officers, directors, employees, representatives, agents, and all other persons acting for or on behalf of the fiduciaries of the Plan." Webb Decl. Ex. I at PDF p. 5. That sweeping scope is unreasonable on its face—particularly for a non-party that has no obligation to marshal the knowledge of every person who has ever acted on its behalf across every division and administrative unit.

The topics themselves are equally expansive, requiring testimony on subjects such as Georgetown's "analysis, review, and/or monitoring of TIAA's sales or promotion" of non-plan products, its "communications [with] TIAA" regarding cross selling, its monitoring of "incentive compensation," and its negotiation of "recordkeeping contracts," among others. Webb Decl. Ex. I at PDF p. 6. These topics could conceivably encompass an enormous volume of information

20

spanning virtually every interaction Georgetown has had with TIAA over more than a decade, and they provide Georgetown with no meaningful guidance as to the boundaries of the testimony Plaintiffs intend to elicit.

The proposed topics are also impermissibly overbroad because they contain no temporal limitations. *See United States ex rel. Barko v. Halliburton Co.*, 270 F.R.D. 26, 29 (D.D.C. 2010) (granting motion for protective order on 30(b)(6) deposition where "all of plaintiff's topics, because they lack temporal restrictions, are overbroad"). While the SAC seeks to certify a class of "participants of defined contribution plans subject to ERISA who (i) initiated a rollover of assets from the participant's individual plan account to any non-plan product or service affiliated with TIAA or TIAA Services at *any time between January 1, 2012 and the date of judgment*" (Webb Decl. Ex. A ¶ 157) (emphasis added), the Subpoena's topics contain no temporal boundaries whatsoever, requiring Georgetown to prepare a witness to potentially testify on subjects spanning the University's entire relationship with TIAA—without any limitation as to time period, plan, or specific conduct. The absence of any temporal boundary compounds the already unreasonable breadth of the topics and would require Georgetown to canvass years' worth of fiduciary committee deliberations, communications, and contractual negotiations in order to prepare a single witness. *See* Kumar Decl. ¶ 6. This is precisely the kind of unbounded inquiry that Rule 30(b)(6)'s reasonable particularity requirement is designed to prevent.

### D.   The Information Sought Is More Easily Obtainable from TIAA

Even if the Subpoena were not otherwise objectionable, it should be quashed because much of the information Plaintiffs seek is obtainable from TIAA. "The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts*, 482 F.3d at 503, 508; *see also* Fed. R. Civ. P. 45(d)(2)(B)(ii) (protecting non-parties from "significant expense"). To be sure, there is no "absolute rule providing that the party

21

must first seek those documents from an opposing party before seeking them from a non-party." *E.E.O.C. v. Premier Well Servs., LLC*, No. 4:10-cv-1419, 2011 WL 2198285, at *1 (E.D. Ark. June 3, 2011) (internal quotation marks omitted). Nonetheless, a court "must limit the frequency or extent of discovery otherwise allowed by [the] rules if it determines . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

Several of the Subpoena's deposition topics seek information that is squarely within TIAA's possession. Topics 2 and 3 seek testimony regarding "communications" between Georgetown and TIAA concerning the promotion and sale of Non-Plan Products or Services. Webb Decl. Ex. I at PDF p. 6. Topic 7 seeks testimony regarding Georgetown's "restriction of TIAA's use of recordkeeping data." *Id*. And Topic 8 seeks testimony regarding the "negotiation of recordkeeping contracts" with TIAA. *Id*. TIAA is a party to each of those communications, restrictions, and contractual negotiations. There is no reason to burden a non-party university with preparing a Rule 30(b)(6) witness to testify on these subjects when the information is readily available from the Defendant itself.

## II.    THE COURT SHOULD ENTER A PROTECTIVE ORDER

In the alternative, Georgetown requests that the Court enter a Protective Order limiting the burden of Plaintiffs' Deposition Subpoena. Georgetown requests several reasonable limitations:

*First*, the Court should strike Topics 2 and 3, which seek "Communication between you and TIAA regarding its promotion and/or sale of its Non-Plan Products or Services to participants in the Plan" and "Communication between you and TIAA regarding Non-Plan Products or Services." Webb Decl. Ex. I at PDF p. 6. These topics are easily obtainable directly from TIAA, which is the defendant in the case.

22

***Second***, the Court should strike the word "promotion" from Topic 1, "Your analysis, review, and/or monitoring of TIAA's sales or ***promotion*** of its Non-Plan Products or Services to participants in the Plan." Webb Decl. Ex. I at PDF p. 6 (emphasis added). As discussed above, because Dr. Gonzales voluntarily sought out TIAA for advice about his retirement savings, the SAC provides no basis to believe that he was cold called or solicited by TIAA to purchase nonplan products; instead, he alleges that he voluntarily sought out TIAA for advice about his retirement savings.

***Third***, the Court should strike Topic 7, "Your analysis, review, monitoring, and/or restriction of TIAA's use of recordkeeping data it obtained from the Plan." Webb Decl. Ex. I at PDF p. 6. As discussed above, because Dr. Gonzales sought out advice from TIAA, the SAC provides no basis whatsoever to believe that Georgetown failed to protect plan participant data.

***Fourth***, Georgetown also asks the Court to strike Topic 4, "Your analysis, review, and/or monitoring of TIAA's revenue from the sale or promotion of its Non-Plan Products or Services to participants in the Plan." Webb Decl. Ex. I at PDF p. 6. As explained, Plaintiffs do not connect this theory to Georgetown at all because the SAC contains no suggestion that the fees associated with Georgetown's retirement plan were imprudent.

In the event the Court denies Georgetown's Motion, Georgetown respectfully asks for 28 days in additional time to comply with the Subpoena and prepare for a deposition.

## **CONCLUSION**

For all of the reasons stated above, nonparty Georgetown University respectfully requests that this Court grant its Motion to Quash Plaintiffs' Deposition Subpoena or grant its Motion for Protective Order.

Date:   April 15, 2026                      Respectfully submitted,


                                    By:     */s/ E. Brantley Webb*

                                            E. Brantley Webb
                                            Reginald Goeke
                                            Sarah Martin
                                            **MAYER BROWN LLP**
                                            1999 K Street, NW
                                            Washington, DC 20006-1101
                                            Tel: 202.263.3000
                                            bwebb@mayerbrown.com
                                            rgoeke@mayerbrown.com
                                            smartin@mayerbrown.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a copy of the foregoing document and all related materials will be sent by email to the below counsel, who *consented in writing* to accept service by email, on this 15th day of April, 2026.

Patrick Kutz
Schlichter Bogard LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
pkutz@uselaws.com
*Counsel for Plaintiffs*

Brad Konstandt
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Brad.Konstandt@wilmerhale.com
*Counsel for TIAA Defendants*

By:    */s/ E. Brantley Webb*

E. Brantley Webb
Reginald Goeke
Sarah Martin
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006-1101
Tel: 202.263.3000
bwebb@mayerbrown.com
rgoeke@mayerbrown.com
smartin@mayerbrown.com